EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| José L. Padín Medina  Peticionaria  v.  Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura  Recurrido | Certiorari  2007 TSPR 146  172 DPR _____ |

Número del Caso: CC-2005-603

Fecha: 2 de agosto de 2007

Tribunal de Apelaciones:

　　　　　Región Judicial de San Juan

Juez Ponente:

　　　　　Hon. Carlos J. López Feliciano

Abogada de la Parte Peticionaria:

　　　　　Lcda. Susan Marie Cordero Ladner

Oficina del Procurador General:

　　　　　Lcda. Miriam Álvarez Archilla
　　　　　Procuradora General Auxiliar

Materia: Revisión Administrativa Procedente de la Junta de Síndicos de la Administración de los Sistemas de Retiro los Empleados de Gobierno y la Judicatura.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Padín Medina

      Peticionaria

        v.                    CC-2005-603

Administración de los Sistemas
de Retiro de los Empleados del
Gobierno y la Judicatura

      Recurrido

PER CURIAM

San Juan, Puerto Rico, a 2 de agosto de 2007.

Por medio del presente recurso se nos solicita revisar el dictamen del Tribunal de Apelaciones, mediante el cual dicho foro confirmó una Resolución de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. Mediante dicha sentencia el foro intermedio apelativo, confirmó la decisión de la Junta de Síndicos denegando los beneficios solicitados por el peticionario para obtener un pago anual por incapacidad ocupacional o en la alternativa, incapacidad no ocupacional.

Confirmamos la sentencia recurrida.

I

El peticionario señor José Padín Medina, en adelante señor Padín Medina, de cincuenta (50) años de edad, cuya preparación académica es cuarto año de escuela superior, trabajó como miembro de la Policía de Puerto Rico. Tiene cotizado para el Sistema de Retiro unos 19.75 años.

El 26 de julio de 1985, el señor Padín Medina sufrió un primer accidente, mientras desempeñaba las funciones de su puesto, al tratar de arrestar a un individuo. Dicho accidente ocurrió cuando el referido individuo se resistió y le agredió con los puños cayendo el señor Padín Medina al pavimento. Consecuencia del accidente sufrió contusiones en el hombro izquierdo y otras partes del cuerpo.[1]

Así las cosas, el señor Padín Medina, acudió a la Corporación del Fondo del Seguro del Estado, en adelante el Fondo. Luego de la correspondiente evaluación fue diagnosticado con las condiciones siguientes: "Síndrome doloroso del hombro izquierdo, post traumático". Como resultado de ello, el Fondo determinó que tenía una disminución de las capacidades de su hombro izquierdo de un 20%. Se le dio de alta en septiembre de 1988.[2]

---

[1] Informe de accidente de Trabajo; Fondo de Seguro del Estado. Apéndice del recurso de *Certiorari*, pág.3.

[2] Certificación de Compensabilidad para la Administración de Sistemas de Retiro; Corporación del Fondo de Seguro del Estado. *Íd* a la pág.2.

Posteriormente el señor Padín Medina, fue referido por el Fondo al doctor Juan Guillén, en adelante, doctor Guillén, médico psiquiatra, debido a que, como consecuencia del trauma recibido en el primer accidente desarrolló una condición nerviosa. El doctor Guillén preparó un informe mediante el cual le diagnosticó un Desorden de Ansiedad Severa.[3]

El 14 de septiembre de 1987, el señor Padín Medina fue atendido por su ortopeda de cabecera, el doctor Carlos Grovas Badrena, en adelante, doctor Grovas. Se le diagnosticó, además, tendinitis bicipital del hombro izquierdo y se le recomendó infiltración con esteroides.[4]

El 29 de mayo de 1993, el señor Padín Medina sufrió un segundo accidente en el cual fue agredido mientras intentaba arrestar a una persona por el delito de alteración a la paz. Sufrió contusiones en la boca y diferentes partes del cuerpo.[5] Como resultado de ello, el Fondo le diagnosticó "Esguince lumbar", y le fijó una incapacidad de un 15% de sus funciones fisiológicas generales. Fue dado de alta en marzo de 1995.[6]

Surge de la prueba documental contenida en el expediente médico del Fondo que el señor Padín Medina padece las condiciones siguientes: *Peripheral polyneuropathy,*

---

[3] Informe medico especial; Fondo de Seguro del Estado. *Íd* a la pág.11-12.

[4] *Íd* a la pág.15.

[5] Informe de Accidente de Trabajo; Fondo de Seguro del Estado, Apéndice del recurso de *Certiorari*, pág. 24.

[6] Certificación de Compensabilidad para la Administración de Sistemas de Retiro de Empleados del ELA, *Íd* a la pág. 23.

*Degenerative L4-L5 disc-disease, suggested disc bulges at the L3-L4-L5 S1 interspaces, Lumbosacral Sprain , HNP L5-S1, Bulging Disc L4-L5 and L5-S1.*

Estos diagnósticos son el resultado de los estudios siguientes: *Lower Extremity Nerve Conduction Examination, MRI of the lumbosacral spine*, evaluación neurológica del doctor Héctor Stella, neurocirujano de cabecera del señor Padín Medina y *CT of Lumbar Spine.* [7]

En abril de 1996, el señor Padín Medina acudió nuevamente a las oficinas del doctor Guillén. En esta ocasión, le manifestó que sufría de ansiedad, desespero, insomnio, olvidos, irritabilidad, deseos de llorar y uso de alcohol. El diagnóstico en esta etapa fue  de trastorno por ansiedad severa con depresión.  Fue referido al First Hospital Panamericano con diagnóstico de Alcoholismo y Distimia secundaria. [8]

El 1 de diciembre de 1997, se le notificó al señor Padín Medina que quedaba cesanteado de su puesto por **incapacidad mental.**

La División de Licencias del Negociado de Recursos Humanos de la Policía de Puerto Rico, recibió los informes médicos del Fondo, donde se recomendaba la separación del servicio del señor Padín Medina.  La razón expuesta fue que su condición le incapacitaba para cumplir **los deberes de su**

---

[7] Apéndice del recurso de *Certiorari*, págs. 29-49.

[8] Certificación realizada por el doctor Juan A. Guillén, siquiatra. *Íd* a la pág 50.

**cargo.** Se adjuntó a dicha carta una solicitud de retiro por condición emocional.[9]

El 28 de agosto de 1998, ante el progresivo desarrollo de su condición de depresión mayor, el señor Padín Medina, radicó ante el sistema de retiro una solicitud por incapacidad no ocupacional, o en su defecto, ocupacional, de conformidad con las disposiciones de la Ley Número 447 de 15 de mayo de 1951, según enmendada.[10]

En mayo de 1998, durante los trámites de su solicitud, el señor Padín Medina acudió a las oficinas del doctor Raúl Benítez, quien se especializa en medicina siquiátrica. Este le diagnosticó **depresión mayor severa  y recurrente**. Dicho informe expresó que no tenía habilidad para manejar fondos y le da un GAF de 40.[11]

---

[9]Cabe señalar que el señor *Padín Medina* Medina fue cesanteado de su puesto en la Policía de Puerto Rico, por el fundamento de incapacidad mental conforme a las disposiciones de la carta circular número 91005, emitida por la Administración de los Sistemas de Retiro.  Dicha decisión se fundamentó en la sentencia emitida en el caso criminal CL96G-0104 por infracción al artículo 272 del Código Penal de 1974, donde encontró no culpable al señor Padín Medina por incapacidad mental y se le ordena ingresar al Hospital Panamericano de Cidra bajo tratamiento.  Véase, Apéndice del recurso de *Certiorari*, págs.72-74.

[10] Solicitud de pensión por incapacidad conforme a la Ley Número 447 de 15 de mayo de 1951, 3 L.P.R.A. sec.761 *et seq.* Apéndice del recurso de *Certiorari*, pág. 51.

[11] Se refiere al *Global Assesment of Function Scale*. Reporte mental preparado por el doctor Raúl Benítez.  Consta en el informe que las visitas para atención médica eran mensuales. Expresa, que asistía siempre en compañía de su esposa.  El reporte revela un juicio social pobre, pérdida de destrezas de cálculo y abstracción, además de poca atención.  La prognosis laboral es pobre.

El señor Padín Medina, estuvo hospitalizado del 8 de enero de 1998 al 27 de enero de 1998 en la Clínica del Norte. Las notas siquiátricas y de progreso realizadas en el Centro de Salud Mental Capitas, donde recibió tratamiento, recomendaron la hospitalización del señor Padín Medina, ante el riesgo de hacerse daño. Las mismas constan en el expediente médico del señor Padín Medina preparado por el Fondo.

El 8 de julio de 1999, la Administración de Sistemas de Retiro le denegó al señor Padín Medina los beneficios de Pensión por Incapacidad Ocupacional y No Ocupacional solicitados. Fundamentó su denegatoria en que sus condiciones no eran incapacitantes, señalando que el señor Padín Medina aún estaba física y mentalmente capacitado para desempeñar labores en el servicio público.[12]

Insatisfecho con esta decisión, el señor Padín Medina, solicitó reconsideración de la determinación notificada, la cual fue declarada, No Ha Lugar.

El 21 de marzo de 2000, apeló dicha decisión ante la Junta de Síndicos de la Administración de Sistemas de Retiro, en adelante Junta de Síndicos, la cual emitió una resolución ordenando la devolución del caso a la Administración de los Sistemas de Retiro, con el fin de examinar nueva evidencia presentada por el señor Padín Medina.[13]

---

[12] Decisión procedente de la División de Determinación de Incapacidad de la Administración de Sistemas de Retiro, Apéndice del recurso de *Certiorari*, pág. 68 y pág. 92.

[13] Apéndice del recurso de *Certiorari*, págs. 102-104.

Mediante resolución de 31 de enero de 2002, se le denegaron al señor Padín Medina los beneficios solicitados. [14]

El 27 de febrero de 2002, el señor Padín Medina, acudió mediante recurso de apelación ante la referida Junta de Síndicos. Celebrada la vista administrativa, dicha Junta emitió resolución confirmando la decisión apelada. Fundamentó dicha confirmación en que el conjunto de síntomas y condiciones del señor Padín Medina no eran incapacitantes.[15]

Inconforme, el señor Padín Medina presentó su recurso de revisión ante el foro intermedio apelativo. Mediante sentencia notificada el 27 de mayo de 2005, dicho Tribunal confirmó la denegatoria de la Administración de Sistemas de Retiro. [16]

Inconforme, el señor Padín Medina acude ante nos, mediante escrito de *Certiorari*, exponiendo los señalamientos de error siguientes:

> **Erró el Tribunal de Apelaciones en la interpretación que hace de la ley y el Reglamento, ya que produce resultados inconsistentes con, o contrarios al propósito de la ley y lleva a la comisión de una injusticia.**
>
> **Erró el Tribunal de Apelaciones en aplicar al presente caso un artículo de ley que fue enmendado completamente y que actualmente no tiene las restricciones que tenía antes de hacer la enmienda.**

---

[14] *Íd* a la pág. 137.

[15] Escrito de Apelación ante la Junta de Síndicos. *Íd* a las págs. 142 y 145.

[16] *Íd* a la pág.228. Véase además, Sentencia emitida por el Tribunal de Apelaciones, pág. 281.

**Erró el Tribunal de Apelaciones en confirmar la decisión de la Honorable Junta de Síndicos, y entender que el peticionario no tiene derecho a recibir la pensión por incapacidad debido a que su estado mental y físico fue provocado por el alcoholismo, ya que esta restricción no existe actualmente en los criterios médicos de la Ley Número 447 del 15 de mayo de 1951.**

**Erró el Tribunal de Apelaciones en resolver que la condición física y mental del apelante fue provocada por el alcoholismo ya que las condiciones del apelante surgieron antes del alcoholismo.**

**Erró la Honorable Junta de Síndicos en la definición de lo que es una persona incapacitada total y permanentemente, según la Ley Número 447 del 15 de mayo de 1951.**

**Erró la Honorable Junta de Síndicos en concluir que la parte recurrente no presenta un cuadro de incapacidad total y permanente para trabajar y en no tomar en consideración la combinación de condiciones del apelante.**

**Erró el Tribunal de Apelaciones al no evaluar la capacidad funcional del peticionario para hacer otro trabajo remunerativo, a la luz de su edad, preparación académica y experiencia de trabajo.**

II

Por estar los errores relacionados entre sí procede discutirlos conjuntamente. En primer lugar procede evaluar el planteamiento relativo a la interpretación, alegadamente errónea, que la Junta de Síndicos hiciera sobre lo que es una incapacidad total y permanente. Ello conforme a los criterios de la Ley Núm.447 de 15 de mayo de 1951, según enmendada, en adelante, Ley Núm.447 [17] y del Reglamento

---

[17] Ley Núm.447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. 761 *et seq.*

General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930, [18] en adelante Reglamento Núm.4930.

Así mismo debemos evaluar el planteamiento relativo a que la Junta de Síndicos, no aplicó la enmienda realizada al Artículo 10 de la Ley Núm. 447 y como consecuencia de ello, se le negó al señor Padín Medina, su derecho a pensión por incapacidad no ocupacional.[19]

En lo pertinente, la Ley de Procedimiento Administrativo Uniforme, en adelante L.P.A.U., sobre la revisión judicial dispone lo siguiente:

> El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio. Las determinaciones de hecho de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos. [20]

La revisión judicial de las decisiones administrativas comprende tres aspectos: (1) la concesión del remedio apropiado, (2) las determinaciones de hecho y (3) las

---

[18] Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Núm. 4930 de 25 de junio de 1993. Cabe señalar que, para las fechas en que el señor Padín Medina solicitó su pensión por incapacidad, este era el Reglamento vigente. El Reglamento Núm. 6719 de 7 de noviembre de 2003, derogó parcialmente el Núm.4930.

[19] Resolución de la Junta de Síndicos, caso Núm.2002-0104, Conclusiones de Derecho. Apéndice del recurso de *Certiorari*, pág. 224.

[20] Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2175.

conclusiones de derecho del organismo administrativo.[21] Sin embargo, debe quedar claro que la norma de impartir deferencia a la interpretación que hace una agencia del estatuto o reglamento que está bajo su administración es una de hermenéutica, que de ningún modo afecta el alcance de la facultad de revisión de los tribunales.[22]

En vista de ello, se han establecido los criterios de **base racional** y **evidencia sustancial** definidos en la jurisprudencia. El término evidencia sustancial se aplica a aquella **evidencia relevante** que una mente razonable podría aceptar como adecuada para sostener una conclusión.[23] Esta norma fue adoptada por este Tribunal antes que la L.P.A.U. así lo estableciera.[24] Tal estatuto actualmente dispone lo siguiente:

a)    tiene que haber una base racional para legitimar una determinación de hecho,
b)    de existir prueba conflictiva el Tribunal debe considerar como concluyente la determinación de hecho de la agencia y
c)    debe respetarse la determinación de credibilidad realizada por la agencia administrativa.

No obstante, estos principios no son estáticos ni fijos.

---

[21] Véase, Sec. 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1997).

[22] Seguros de Puerto Rico v. Gen. Accidents Ins.Co, 132 D.P.R. 543, 553, esc. 2 (1993).

[23] Hilton Hotels v. Junta de Salario Minimo, 74 D.P.R. 670 (1954).

[24] Echevarría Vargas,J. *Derecho Administrativo Puertorriqueño*, Ediciones Situm, 2005, pág.166.

La **prueba debe ser evaluada en su totalidad** incluyendo aquella que sostenga la decisión de la agencia, así como la **que reduzca o menoscabe el peso de la prueba** que fue considerada por la agencia.

El uso de principios generales de derecho administrativo fuera de contexto es labor en extremo peligrosa. Hay que examinar las **circunstancias en que operan y la razón de su empleo en el caso específico** que nos ocupa.[25]

No es posible hacernos en este campo de una escala Richter que clasifique cada fenómeno automáticamente, la dificultad reside esencialmente en la precisa aplicación de dichos principios.[26]

Es por eso que las determinaciones de hecho de las agencias administrativas deben ser lo suficientemente definidas. De este modo se cumple el propósito de poner a los tribunales en posición de revisar de forma inteligente la decisión del organismo administrativo y determinar si **los hechos probados** por la agencia ofrecen una **base razonable** para su evaluación. Por tanto, la decisión de la agencia debe exponer los hechos determinados como probados, que incluyen las inferencias, que en última instancia creyó justificadas.[27]

De ordinario, los tribunales le confieren deferencia,

---

[25] Gellhorn y Robinson, *Perspectives on Administrative Law*, 75 Colum. L. Rev. 771, 783 (1975).

[26] Junta de Relaciones de Trabajo v. Escuela Eugenio María de Hostos, 107 D.P.R. 151 (1978).

[27] Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico y Autoridad de Acueductos y Alcantarillados, 146 D.P.R. 64 (1998).

tanto a las determinaciones de hecho que emiten las agencias administrativas, como a las interpretaciones que de las leyes cuya administración les ha sido encomendada hacer de las mismas.[28] No obstante, los tribunales no están llamados a imprimir un sello de corrección, so pretexto de la deferencia, para avalar situaciones en que la interpretación efectuada resulta contraria a derecho.

En cuanto a las conclusiones de derecho, la agencia no puede limitarse a recitar o a repetir frases generales que aparecen en sus reglamentos o en su ley orgánica como único fundamento para su decisión.[29] Las determinaciones de hecho y las conclusiones de derecho, por lo tanto, no pueden ser *pro forma*.[30]

Aun cuando la revisión judicial de las decisiones administrativas depende del estatuto involucrado en cada caso, lo cierto es que tanto la apreciación arbitraria de la prueba por parte del organismo administrativo, como la determinación sobre si las conclusiones de hecho que sirven de base a su decisión están sostenidas por **evidencia sustancial**, constituyen una cuestión de derecho.[31]

---

[28] San Antonio Maritime v. Puerto Rican Cement Co, 153 D.P.R. 374.

[29] López v. Junta de Planificación, 80 D.P.R. 669 (1958).

[30] Rivera Santiago v. Secretario de Hacienda, 119 D.P.R.278 (1987).

[31] Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico y Autoridad de Acueductos y Alcantarillados, 146 D.P.R.64 (1998).

Normalmente un dictamen de una agencia constituye un abuso de discreción cuando es arbitrario y caprichoso. Esto es, si la agencia descansó en factores que la Rama Legislativa no intentó considerar, si no considera un aspecto importante de la controversia u ofrece una explicación para su decisión que contradice la evidencia presentada ante la agencia, o si formula una conclusión de derecho que es tan poco plausible que no pueda ser interpretada, de esa forma, como producto de la especialización de la agencia.[32]

Una vez expuesto el derecho aplicable a la revisión de las determinaciones de las agencias administrativas, consideraremos la legislación y reglamentación aplicable a la pensión por incapacidad, solicitada por el aquí peticionario.

El sistema de retiro para los empleados de gobierno y la judicatura de Puerto Rico, se rige por la Ley Núm. 447.[33] Dicho estatuto, establece las circunstancias bajo las cuales un participante del sistema puede ser acreedor a los beneficios de una incapacidad ocupacional o no ocupacional.

A tales efectos son de aplicación los artículos 9 y 11 de

---

[32] Motor Vehicle Mfrs.Ass´m v. State Farm Mut.Auto.Ins.Co. 463 U.S.29 (1983).

[33] Ley Núm. 447 de 15 de mayo de 1951, 3 L.P.R.A 761 et seq. Esta pieza legislativa contiene varias modalidades de pensiones o anualidades por retiro que incluyen pensiones por edad, por años de servicio, que a su vez incluyen la pensión diferida luego de que el participante haya rendido 10 años o más de servicio, por incapacidad ocupacional, por incapacidad no ocupacional y por mérito. Fue enmendada por la Ley Núm. 302 de 2 de septiembre de 2000.

la referida ley.[34] En ellos se dispone lo siguiente:

**Artículo – 9**

"Todo participante que, como resultado de una incapacidad que se origine por **causa del empleo y surja en el curso del mismo**, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por **incapacidad ocupacional**, siempre que:

a. Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante **conforme a los criterios que mediante reglamento** fije el Administrador.

b. El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.

c. El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.

d. El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud". (Énfasis nuestro)

**Artículo – 11**

El Artículo 11 de la Ley Núm. 447, dispone que a los fines de recibir los beneficios de retiro por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica, conforme a los **criterios que mediante reglamento** fije el Administrador, y dicha prueba revele que el participante está imposibilitado para cumplir

---

[34] Ley Núm. 447 del 15 de mayo de 1951, 3 L.P.R.A.secs.769, 771, respectivamente.

los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. Preceptúa lo siguiente:

> "Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con **suficiente prueba médica conforme a los criterios que mediante reglamento fije el Administrador** y dicha prueba revele que el participante está imposibilitado para cumplir los **deberes de cualquier cargo** que en el servicio del patrono se le hubiere asignado.
> El Administrador, según lo crea conveniente y necesario, podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. Cuando la prueba médica revele que el participante está total y permanentemente incapacitado para cumplir los deberes de cualquier cargo, no será necesario el examen periódico."

El listado de tales criterios médicos se define en el Reglamento General para la Concesión de Pensiones, Beneficios y Derechos a los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, Núm. 4930 de 25 de junio de 1993, en adelante, Reglamento Núm.4930.

Allí se incorpora, por referencia, el Apéndice I (*"Adult Listings"*) en el que se incluye un listado de criterios médicos aprobados bajo las disposiciones del Título II de la Ley Federal sobre Seguridad Social, según enmendada.[35] Para determinar la incapacidad del solicitante, dicha legislación considera, además, los resultados que surjan del análisis e investigación que realicen los técnicos para ellos designados.

---

[35] *Social Security Regulations: Rules for Determining Disability*, 20 C.F.R. 404 Subt.P., App.1.

Cabe destacar que aún cuando el Reglamento Núm. 4930 hace referencia a los criterios de incapacidad de los reglamentos federales, este Foro ha expresado que la determinación de incapacidad al amparo de la Ley Núm.447, debe limitarse exclusivamente a evaluar si la incapacidad del solicitante es tal que le **impide realizar las funciones de su empleo o de cualquier otro trabajo remunerativo.**[36]

Por otra parte, el estatuto en cuestión señala, que se considerará **capacitado** al empleado si **no está total y permanentemente imposibilitado** para cumplir los deberes de cualquier cargo que su patrono le hubiese asignado para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que está percibiendo a la luz de su edad, educación y experiencia de trabajo.

De modo tal que, una **incapacidad leve**, que limite las funciones de su trabajo o de cualquier otro empleo remunerativo, **no da base** para recibir una pensión bajo el estatuto.[37]

La Regla 24 de dicho cuerpo reglamentario dispone respecto a las pensiones por **incapacidad ocupacional** cumplir los requisitos siguientes:

> a)   que el participante esté en el servicio activo a la fecha de radicación de la solicitud,
>
> b) que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante,

---

[36] Sánchez v. Administración de los Sistemas de Retiro, 116 D.P.R.372, 376 (1985).

[37] Íd a la pág. 372.

c) que el Fondo del Seguro del Estado haya determinado que la condición incapacitante esté <u>relacionada con el empleo del participante y es compensable</u>, y

d) que el participante o su patrono notifique dicha incapacidad por escrito al Administrador, <u>dentro de los seis (6) meses siguientes a la fecha en que el Fondo… haya</u> determinado que la condición incapacitante está relacionada con el empleo de, participante.[38]

La Regla 24.4 del referido Reglamento, define cuándo se considerará a un participante incapacitado, al disponer lo siguiente:

"Si de la **evidencia médica** que consta en el expediente **y** conforme al listado de criterios médicos (***Adult Listings***) establecidos para determinar incapacidad y del análisis e investigación que realicen los técnicos en determinación de incapacidad [sic]designados por el Administrador, <u>no se pudiese determinar con certeza la incapacidad</u>, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador.
Se considerará **capacitado** al participante, si no está total y permanentemente incapacitado e imposibilitado de cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo." (Énfasis suplido)

---

[38] Regla 24.2 del referido reglamento.

Finalmente, la Regla 25.4, en esencia, define lo que habrá de considerarse como incapacidad, cuando dispone, en lo pertinente de la forma siguiente:

> "... Se considerará capacitado al participante, si no está **total y permanentemente incapacitado e imposibilitado** para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que éste percibiendo".(Énfasis suplido).

Conforme a la normativa jurídica esbozada nos corresponde examinar si la evaluación que hiciera, tanto la Administración de los Sistemas de Retiro como la Junta de Síndicos, fue una razonable.

En el caso de marras, la Junta de Síndicos, confirmó la determinación de la Administración de los Sistemas de Retiro y denegó los beneficios de pensión por incapacidad solicitados por el señor Padín Medina. Esto, por entender que su condición a la luz de la evidencia médica suministrada, y de los resultados médicos realizados por el Fondo del Seguro del Estado, arrojaron un resultado que no cumplía con los criterios médicos de incapacidad total y permanente. Dicha determinación fue sostenida por Tribunal de Apelaciones.

Antes de resolver, es preciso aclarar que el criterio bajo el cual se revisaran las determinaciones de hecho del caso ante nos, es el de razonabilidad. Nos corresponde evaluar si las determinaciones de hecho que constan en el expediente, fundamentaron la decisión emitida por la Junta de

Síndicos y además, si la misma se encuentra sostenida por evidencia sustancial.

Es norma reiterada que es a la Administración de los Sistemas de Retiro a quien le compete evaluar los criterios fijados por su reglamento, ponderar la prueba presentada y determinar si un solicitante los cumple o no. No obstante, nada impide evaluar si existe otra prueba en el expediente que **reduzca o menoscabe el valor probatorio** de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[39] Veamos.

No hay duda, ni está en controversia que los accidentes sufridos por el señor Padín Medina ocurrieron por causa de su empleo y en el curso del mismo. A tales efectos, recibió la compensación fijada por el Fondo del Seguro del Estado conforme a la incapacidad resultante en ellos. De conformidad con las disposiciones de la Ley Núm.447 solicitó la pensión por incapacidad ocupacional o, en su alternativa incapacidad no ocupacional. Para la concesión de una pensión por incapacidad ocupacional, solamente se exige que esta se origine por causa del empleo, mas si se trata de incapacidad no ocupacional, se requiere que el participante tenga diez (10) años de servicio acreditables. La Reglas 25 y 25.1 del Reglamento en cuestión, regulan las normas para la concesión

---

[39] _Ramírez Rivera v. Departamento de Salud_, 147 D.P.R. 901 (1999).

de pensiones por incapacidad no ocupacional.[40]

Si examinamos los requisitos establecidos para aplicar a la pensión de **incapacidad ocupacional**, encontramos que el único requisito en controversia del Artículo 9 de la Ley Núm. 447, es el siguiente:

> a) Se recibiere **suficiente prueba médica** en cuanto a la incapacidad mental o física del participante **conforme a los criterios que mediante reglamento** fije el Administrador.

Los criterios a los que se refiere el mencionado artículo son los establecidos en el Reglamento Núm.4939. Conforme a la solicitud de incapacidad ocupacional, dicho Reglamento establece en la regla 24.2 cuatro (4) requisitos, entre los cuales el <u>único</u> en controversia es el siguiente:

> b) que se reciba suficiente prueba médica en cuanto a la incapacidad mental o física del participante…

Además, la regla 24.4 del mismo Reglamento dispone que para determinar la incapacidad, como primer paso los criterios a considerar son los siguientes:

a)… la **evidencia médica** que consta en el expediente **y** conforme al listado de **criterios médicos** ("adult listing")…

La referida regla establece que <u>si de lo anterior, no se pudiese determinar con certeza la incapacidad, se recurre a</u>

---

[40] La Regla 25.1 define dicha incapacidad de la manera siguiente: "Todo participante que se inhabilite total y permanentemente para el servicio por causas no relacionadas con el por empleo, tendrá derecho a solicitar una anualidad por incapacidad no ocupacional".

someter al participante a aquellos exámenes médicos adicionales que entienda necesario.

No obstante, se exige que la incapacidad de que se trate sea una **total y permanente**. Una lectura integrada de dichos preceptos establecen que la incapacidad total y permanente, es aquella que impide cumplir los deberes de cualquier cargo, o no permite trabajar en cualquier empleo retribuido.[41] Para determinar la incapacidad se adopta por referencia el Apéndice I del *"Adult Listing"* o criterios médicos aprobados bajo las disposiciones del Titulo II de la Ley Federal de Seguridad Social.[42]

Este esquema de evaluación, se debe ejercer con atención y cuidado. La determinación de lo que constituye una incapacidad para realizar cualquier trabajo remunerado no es una tarea fácil.[43] No hay una definición precisa de incapacidad, más bien, se establece a base de la inhabilidad para desempeñar aspectos sustanciales y básicos del trabajo en cuestión.

En la interpretación de dichos estatutos compensatorios por incapacidades similares, la normativa para determinar la incapacidad total atiende dos consideraciones: 1) el impedimento físico del trabajador y su extensión, medido y expresado desde el punto de vista médico, en términos de

---

[41] Artículo 11 de la Ley Núm 447 de 15 de mayo de 1951,3 L.P.R.A.761 *et seq.*; Regla número 24.4 y 25 del Reglamento Núm. 4930 de 25 de junio de 1993..

[42] *Social Security Regulations: Rules for Determining Disalability*, 20 C.F.R. 404 Subpt.P.

[43] Rodríguez v. Comisión Industrial, 90 D.P.R. 764 (1964).

pérdida de la función fisiológica general y 2) el efecto de ese impedimento físico sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo.[44]

Expresamos en Rodríguez Ortiz v. Comisión Industrial, *supra,* que desde el punto de vista legal, se le puede considerar como totalmente incapacitada si no puede realizar aquellos aspectos sustanciales y básicos de trabajo, o sea que si los servicios que puede prestar son tan limitados en calidad, cantidad o en cuanto a su condición de confiabilidad, de modo que no hay un mercado o demanda para ellos, puede considerarse a la persona totalmente incapacitada.

Por lo tanto, no es justo ni cónsono con la intención legislativa, para las disposiciones estatutarias remediales, interpretar dicho concepto de manera tan literal y estricta que requiere un grado tal en el cual la condición de salud sea tan ruinosa que no le permita ninguna actividad.[45]

Siendo los criterios médicos establecidos en el *"adult Listing"* el **primer paso** del proceso de evaluación cabe preguntarnos si las condiciones del señor Padín Medina se ajustaban a dichos criterios.

La Junta de Síndicos determinó que era correcta la decisión de la Administración de los Sistemas de Retiro en cuanto a que el conjunto de síntomas o emociones que presentó

---

[44] Nos referimos a la Ley de Compensaciones por Accidentes de Trabajo, Ley Núm. 45 de 1935; Rodríguez v. Comisión Industrial, *supra.*

[45] *Íd.*

el señor Padín Medina no cumplieron los criterios de severidad de los listados 12.04 y 12.06 para otorgar los beneficios de incapacidad. Concluyó que luego de analizar toda la evidencia presente, de evaluar la totalidad del expediente y de la credibilidad impartida al testimonio del allí apelante, las condiciones del peticionario relacionadas y no relacionadas no constituyen impedimento alguno, ni en forma aislada ni en forma combinada, que le permitan a éste obtener los beneficios de una incapacidad ocupacional o no ocupacional.[46] Veamos.

La condición del señor Padín Medina comenzó en julio de 1985, fecha en la que ocurre su primer accidente. Es a partir de ese momento que comienzan a manifestarse las condiciones físicas y emocionales, las cuales, a medida que se agravan provocaron su despido. Esto se evidencia mediante la carta que se le dirigió en la que se le indicó lo siguiente:

> … *"le informo que usted está cesanteado de su puesto por incapacidad mental a la fecha de la notificación a tono con las disposiciones de la carta circular emitida por la Administración de los Sistemas de Retiro de los Empleados de Gobierno… "* [47] (subrayado nuestro).

> … *"Recientemente en nuestra División de Licencias de este Negociado recibimos informes médicos del Fondo del Seguro del Estado, donde le recomienda la separación del servicio del señor José L. Padín Medina debido a que su*

---

[46] Conclusiones de Derecho de la Resolución emitida por la Junta de Síndicos sobre incapacidad. Apéndice del recurso de *Certiorari,* pág. 225.

[47] Carta de Despido entregada al señor Padín Medina. Apéndice del Recurso de *Certiorari,* pág. 105.

> *condición le incapacita para desempeñar las funciones de su cargo.*" (Subrayado nuestro).[48]

En 1993, fecha en que ocurre su segundo accidente, el señor Padín Medina, estuvo en tratamiento, para su condición de Síndrome doloroso del hombro izquierdo, como para la de Esguince Lumbar. Los desórdenes afectivos y emocionales se mantuvieron presentes durante este tiempo y fue necesario recluirlo en varias ocasiones para tratamiento. Toda esta evidencia consta en el expediente que tuvo ante sí la agencia en cuestión.[49]

Cabe señalar que si bien se determinó, que el señor Padín Medina estaba incapacitado para cumplir con sus deberes **como miembro de la Policía de Puerto Rico**, no hay constancia en ninguna parte del expediente de que, conforme a la regla 24.4 del Reglamento Num. 4930, no pudiera realizar otro cargo o empleo remunerado.

---

[48] Carta suministrada por el Negociado de Recursos Humanos. Apéndice del Recurso de *Certiorari*, pág.106.

[49] Al momento de la celebración de la vista en su fondo, constaba en autos la prueba documental siguiente: Informe del doctor Juan A. Guillén, fechado el 2 de junio de 1986 donde se le diagnosticó que **no duerme bien, pesadillas frecuentes, temblor, e intranquilidad**. En la segunda página del informe se le diagnostica **retardación psicomotora, tensión, quejas somáticas y emocionales**. El certificado médico del doctor Juan A. Guillén, fechado el 1 de mayo del 1996, donde se le recomendó continuar su tratamiento de salud mental por **ansiedad, desespero, irritabilidad, deseos de llorar**. *Mental Impairment Evidence Report*, donde se destaca que sus visitas fueron mensuales, **depresiones recurrentes desde 1985 al 1993**. Entre los síntomas presentados destacan: **aislamiento constante y rechazo a compartir con su familia, miedos constantes, fobias, pérdidas de destrezas de cálculo, juicio social pobre, y prognósis laboral pobre**. Apéndice del recurso de *Certiorari*, págs. 83, 96-100. En el récord médico de Capitas se hace mención de ideación suicida.

El señor Padín Medina produjo ante los foros recurridos prueba médica para cualificar en los listados siguientes:[50] Desorden Afectivo 12.04 (A) (1) Síndrome de depresión mayor, caracterizada por lo menos por cuatro de las siguientes condiciones: 1) marcada disminución de interés en casi todas las actividades, 2) agitación o retardación psicomotora,3) dificultad de concentración o pensamiento, 4) pensamientos suicidas. Desorden Afectivo 12.04 (B) caracterizado entre otros, por: 1) marcada dificultad en mantener funcionamiento social, 2) marcada dificultad en mantener el paso, la concentración o persistencia. Trastornos relacionados a la Ansiedad, 12.06  A y B: caracterizado entre otros, por: 1) Ansiedad generalizada persistente acompañada por tres o cuatro síntomas, tales como: tensión motora, espera temerosa, vigilancia, 2) Restricciones marcadas en las actividades del diario vivir, dificultades para mantener el funcionamiento social, dificultades marcadas para mantener la concentración, episodios repetidos de descompensación con duración prolongada.

La Junta de Síndicos a base de lo anterior, concluyó entre otras cosas, que el señor Padín no cumplía con los criterios establecidos ni con el grado de severidad requerido.

---

[50] *Social Security Regulations: Rules for Determining Disalability*, 20 C.F.R. 404 Subpt.P. Nos hemos limitado a mencionar únicamente aquellos síntomas del listado que están sostenidos por la evidencia médica que consta en el expediente. Los criterios mencionados son una traducción nuestra al español.

El foro intermedio apelativo confirmó dicha determinación. Les asiste razón.

No se demostró que las condiciones padecidas por el señor Padín Medina fueron de tal naturaleza que le inhabilitaran para hacer cualquier otro trabajo que produzca un ingreso en forma ordinaria y estable. La evidencia médica presentada no estableció el parámetro requerido de incapacidad total y permanente. Una evaluación de la totalidad del expediente demuestra que el señor Padín Medina presenta unas **limitaciones**. Sin embargo, no demuestran la severidad requerida por la Ley Núm.447 para ser acreedor de la pensión solicitada.

Por tal razón, determinamos que las determinaciones de hechos y las conclusiones de derecho de la Junta de Síndicos son correctas y están sostenidas por la evidencia recibida.

Con la evidencia presentada el señor Padín Medina no demostró, que la determinación denegatoria de los beneficios por incapacidad ocupacional o en su defecto no ocupacional, no está justificada por el derecho aplicable y por una evaluación justa del peso de la evidencia. Por tal razón, concluimos que no se justifica la revocación de la sentencia de la cual se recurre y confirmamos la resolución emitida por la Junta de Síndicos.

En su segundo señalamiento de error, el señor Padín Medina, alega que el Tribunal de Apelaciones no consideró la enmienda del Artículo 10 de la ley Núm.447, y por tal razón

se le negó la pensión por **incapacidad no ocupacional** solicitada. Veamos.

La Ley Núm.302 del 2 de septiembre de 2000, enmendó el artículo 10 de la Ley Núm.447. Dicha enmienda dispuso lo siguiente:

> " Todo participante que, teniendo por lo menos 10 años de servicios acreditados , se inhabilitare para el servicio , debido a un estado mental o físico y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado , tendrá derecho a una anualidad por incapacidad."

No obstante, para **las fechas en que el recurrente solicitó su pensión por incapacidad ocupacional o en su defecto, no ocupacional**, es decir, 28 de agosto de 1998, el artículo 10 de la Ley anteriormente citada, en lo relevante al caso de autos, disponía lo siguiente:

> " Todo participante , que teniendo por lo menos 10 años de servicios acreditables, se inhabilitare total y permanentemente para el servicio, debido a un estado mental o físico no provocado por hábitos viciosos, intemperancia o mala conducta, y que por razón de ese estado estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado , o para trabajar en cualquier clase de empleo retribuido por lo menos con una retribución igual a la que perciba tendrá derecho a una anualidad por incapacidad no ocupacional …. (Énfasis suplido, y subrayado lo eliminado por la enmienda).

Concluimos que es de aplicación este último artículo a la situación de marras. Ello debido a que era el vigente al momento de los hechos que motivaron la solicitud de pensión

del señor Padín Medina. Dicho Artículo y la regla 25.3 del Reglamento Núm.4930, descalifica como acreedor de pensión, al solicitante que se incapacite como consecuencia de hábitos viciosos, intemperancia o mala conducta.[51] La Junta de Síndicos concluyó, entre otras cosas, que la condición metal del señor Padín Medina estaba vinculada a un problema de alcoholismo. Consta en el expediente que el señor Padín Medina recibió tratamiento por uso de alcohol durante el tiempo que le fueron diagnosticados los síntomas de depresión que provocaron su degeneración física y emocional. No obstante, al momento de solicitar la pensión por incapacidad no hay evidencia de que existía hábito o dependencia de alcohol.

Independientemente de que su condición fuera provocada por el alcoholismo o no, el señor Padín Medina no cumple con los criterios estrictos que el Artículo 10 de la referida Ley Núm. 447 requiere para determinar la incapacidad total y permanente de un empleado.

---

[51] En materia de **incapacidad no ocupacional**, la Regla 25.3 de dicho Reglamento dispone que para tener derecho a una pensión por incapacidad no ocupacional, el participante deberá cumplir con los requisitos siguientes: a) tener por lo menos diez (10) años de servicios acreditables; b) estar en servicio activo a la fecha de radicación de la solicitud; c) que la incapacidad física o mental no haya sido provocada por hábitos viciosos, intemperancia o mala conducta; d) que se reciba suficiente prueba de la incapacidad del participante, que demuestre que está incapacitado total y permanente-mente para cumplir con los deberes de cualquier cargo que en el servicio del patrono se le hubiese asignado o para trabajar en cualquier clase de empleo retribuido, por lo menos con una retribución igual a la que tenía derecho a estar percibiendo estando en servicio activo."

III


Por los fundamentos antes expuestos, se confirma  la sentencia del Tribunal de Apelaciones.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José L. Padín Medina

     Peticionaria

         v.               CC-2005-603

Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura

     Recurrido

SENTENCIA

San Juan, Puerto Rico, a 2 de agosto de 2007.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia recurrida, emitida por el Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. Las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez no intervinieron.

          Aida Ileana Oquendo Graulau
         Secretaria del Tribunal Supremo